JAMES, J.
*210 Defendant appeals a judgment of conviction for disorderly conduct in the second degree. ORS 166.025. She assigns error to the trial court's denial of her pretrial motion to declare borderline personality disorder a mental disease or defect for purposes of ORS 161.300 (2016), amended by Oregon Laws 2017, chapter 634, section 4. In particular, defendant argues she was prevented from presenting evidence of, and instructing the jury on, the issue of borderline personality disorder as a mental disease or defect as part of a partial responsibility defense under ORS 161.300 (2016). In response, the state argues that, although the trial court denied defendant's pretrial motion, she was allowed to present evidence about her borderline personality disorder and develop the defense during the trial. The state adds that defendant argued to the jury that the evidence of her borderline personality disorder established reasonable doubt as to whether the state had met its burden to prove that defendant formed the requisite mental states for the charged crimes after the trial court instructed the jury on intent and the state's burden. We conclude that the trial court did not commit reversible error in denying defendant's motion and, in light of State v. Booth , 284 Or. 615, 588 P.2d 614 (1978), and the facts here, any error resulting from the trial court's failure to instruct the jury on the partial responsibility defense is harmless. Accordingly, we affirm.
Defendant was having suicidal ideation and went to the emergency room. She wrote a note to the receptionist stating that she was suicidal and sat down in the waiting room. After waiting for 15 minutes, defendant felt that the hospital staff did not believe that she was suicidal, so she walked out of the emergency room and into a busy three-lane road. She stood in the middle of traffic and yelled.
A hospital security guard intervened, trying to escort defendant out of the road and onto the sidewalk. Defendant returned to the middle of the road and the hospital security guard called for assistance. Two police officers arrived and eventually arrested defendant and transported *211 her to jail. For that conduct, the state charged defendant with *79 second-degree disorderly conduct, among other things.[1]
Before trial, defendant filed a motion seeking an order from the trial court declaring borderline personality disorder a mental disease or defect for purposes of ORS 161.300 (2016). In particular, she notified the trial court that she was raising a partial responsibility defense and that she intended to offer evidence of mental disease or defect as it related to the mental state for the charged crimes. Defendant also requested that the jury be instructed as to the following:
"You may consider evidence that the Defendant suffered from a mental disease or defect in making your decision whether the Defendant had the mental state that is required for the commission of the charged offense.
"The term 'mental state' refers to intent, knowledge, and recklessness."
(Footnote omitted.)
In response to defendant's motion, the state acknowledged that defendant could raise a partial responsibility defense during the trial to show that she did not act with the requisite mental states but argued that defendant's requested jury instruction was not appropriate because it would inappropriately suggest to the jury that the trial court had determined that defendant's borderline personality disorder excused her criminal conduct. Instead, the state proposed:
"If [defendant] want[s] to produce evidence about her diagnosis and her time with the doctor and all of that to show, you know, generally speaking, around the time, even though it wasn't on the day in question, this is what was going on with her, that's fine. But that all the jury needs to know is that at the end of the day, they're instructed that you have to find the mental states that they-the defendant's been charged with and the State has to prove *212 it beyond a reasonable doubt and you can consider all the evidence that you've heard in this case to make that decision[.]"
After hearing arguments from both of the parties on the motion, the trial court denied the motion and declined to declare borderline personality disorder a mental disease or defect. As to the corresponding requested jury instruction, the trial court explained
"that given what I've previously ruled as to what a Borderline Personality Disorder is for this case and what it is legally, I'm not going to give that instruction. Where the evidence plays out in the trial itself, obviously we don't know yet where we will be, but given everything that the court has heard, it does appear that what the argument from the defense is going to be is that [defendant] just didn't have the capacity to form the intent in this case."
The case proceeded to trial. During defendant's opening statement, defense counsel explained that "what's important to understand about that day is that [defendant] was having a mental health crisis." Defense counsel continued, "And at the end of this case, we're going to ask that you find [defendant] not guilty consistent with the evidence of the charged conduct" and concluded, "we're going to ask you to look at the situation from [defendant's] perspective as this person experiencing this mental health crisis, confronted with the circumstances that I just talked about."
At trial, defendant's expert psychologist, Dr. Kenney, testified about her borderline personality disorder diagnosis, including testimony that defendant's behavior during the incident was consistent with the symptoms of her diagnosis. Kenney explained that a person with borderline personality disorder may seek attention from others by engaging in self-harming behaviors and respond with "anger and rage." He testified that defendant's behavior during the incident reflected the "hallmarks" of borderline personality disorder.
After the parties rested, the trial court instructed the jury on disorderly conduct in the second degree, ORS 166.025 :
*80 *213 "Disorderly conduct in the second degree. Oregon law provides that a person commits the crime of disorderly conduct in the second degree if the person while intentionally creating a risk of causing [public] inconvenience, annoyance or alarm, obstructs vehicular or pedestrian traffic on a public way.
"In this case to establish the crime of disorderly conduct in the second degree, the State must prove beyond a reasonable doubt the following four elements. Not three. One, the act occurred in Washington County, Oregon; two, the act occurred on or about February 24th, 2016; three, [defendant] recklessly created a risk of causing public inconvenience, [annoyance] or alarm by; four, intentionally obstructing vehicular or pedestrian traffic on a public way."
The trial court instructed that "[a] person acts intentionally or with intent when that person acts with a conscious objective to cause a particular result or engage in particular conduct." It also instructed that
"[a] person acts recklessly if that person is aware of and consciously disregards a substantial and [unjustifiable] risk that a particular result will occur or a particular circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."
Moreover, the trial court instructed, "Reasonable doubt means an honest uncertainty as to the guilt of the defendant. Reasonable doubt exists when after careful and impartial consideration of all the evidence in the case, you are not convinced that the defendant is guilty."
Following the trial court's instructions to the jury, the parties made their closing arguments. Defense counsel argued to the jury:
"In the crimes, they have elements. The State must prove each element. If there's four elements and the State only proves three, that person's not guilty of a crime.
"* * * * *
"We're talking about mental states, because every crime as you've now seen in your jury instructions has physical actions and mental states. And if a person has both of *214 those, they do the conduct and they have the mental state, then you have a crime.
"* * * * *
"And another way she fills her time is managing her mental illness, Borderline Personality Disorder, which you heard a lot of testimony about, so I'm not going to spend a whole lot of time on it, but I want to focus on a handful of important things that were said about Borderline Personality Disorder. And, again, the evidence is uncontested, [defendant] has this, that it seriously impairs her functioning.
"* * * * *
"And let me be very clear that this is no fault of [defendant's] own. We had a lot of talk about where [borderline personality disorder ] comes from, how it manifests. You heard all that. It is clear that people don't have a choice in this. [Defendant] doesn't have Borderline Personality Disorder because she decided one day to be an ornery person or because she thought the world was giving her a bad shake and she wanted some excuse. If she could choose not to have it, she probably wouldn't have it. Probably certainly so. But she has this mental illness and it causes her a distortion of what she perceives, particularly involving other people's actions.
"[The state] accurately characterized why you get to hear this evidence about the mental illness. Because it is relevant to, one, deciding whether [defendant] had that criminal intent or criminal knowledge or criminal recklessness, the mental state required for these crimes.
"* * * * *
"Understanding, the idea of understanding is critical to this case. Understanding and comprehending who [defendant] is as a person, what her mental illness means, how it affects her and her interactions with other people and how it bears on this case."
The jury deliberated and found defendant guilty of disorderly conduct in the second degree.
In the case before us, defendant was found guilty of disorderly conduct, a crime requiring *81 intent to cause public inconvenience, annoyance or alarm, or recklessly creating *215 a risk of the same. ORS 166.025. Defendant, having been diagnosed with borderline personality disorder, wanted to raise a partial responsibility defense under ORS 161.300 (2016). ORS 161.300 (2016) stated:
"Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."
Whether a defendant suffered from "a mental disease or defect" determined whether ORS 161.300 (2016) was available to her as a defense.[2] ORS 161.295(2) (2016), amended by Oregon Laws 2017, chapter 634, section 3, stated:
"[T]he terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."
However, in State v. Booth , 284 Or. 615, 619, 588 P.2d 614 (1978), the defendant also wanted the jury instructed as to the defense, but as the Oregon Supreme Court explained, " ORS 161.300 is an evidentiary statute and does not speak to the issue of jury instructions." The Booth court concluded:
"[T]he trial court instructed the jury that the State had the burden of proving all the material allegations of the complaint, including intent, beyond a reasonable doubt. Because the partial responsibility theory is merely one method of rebutting the State's allegation of intent, the theory is adequately covered by general instructions on the *216 State's burden of proof. Consequently, the failure to instruct on partial responsibility could not have been prejudicial. As a general rule, trial courts need not give instructions that highlight particular evidence or testimony."
Id. at 619-20, 588 P.2d 614 (footnote omitted). The court clarified that, "[i]n holding that it is not reversible error to refuse a partial responsibility instruction, however, we do not mean to imply that such instructions are improper." Id. at 620, 588 P.2d 614. Rather, where a trial court properly instructs the jury on the state's burden to prove all elements of the charged crime, including mental states, beyond a reasonable doubt, "any error in failing to give an instruction on the issue of partial responsibility [is] not prejudicial." Id. at 619, 588 P.2d 614 (internal quotation marks omitted).
Here, as in Booth , although the trial court denied defendant's motion and requested jury instruction raising a partial responsibility defense under ORS 161.300 (2016), any error in failing to give the jury instruction was harmless because the trial court properly instructed the jury as to the state's burden to prove beyond a reasonable doubt all elements of ORS 166.025, disorderly conduct in the second degree, including intent. Moreover, defendant was permitted to generally develop a partial responsibility defense at trial, introduce evidence and expert testimony related to her borderline personality disorder, and argue before the jury the issues of intent and borderline personality disorder in her opening and closing remarks. Accordingly, the trial court's denial cannot be considered prejudicial.
Affirmed.

Defendant was indicted for assaulting a public safety officer, ORS 163.208 (Count 1); resisting arrest, ORS 162.315 (Count 2); and disorderly conduct in the second degree, ORS 166.025 (Count 3). The jury acquitted defendant on Counts 1 and 2. Accordingly, facts pertaining to defendant's interaction with the two police officers, which are not pertinent to the issues before us, have been omitted.

As we have pointed out, "the statute does not define what constitutes a 'personality disorder.' " Beiswenger v. PSRB , 192 Or. App. 38, 45, 84 P.3d 180 (2004). Borderline personality disorder is not explicitly included and "the statutory references to 'mental disease or defect' and 'personality disorder' are ambiguous."Id. at 46, 84 P.3d 180. Whether borderline personality disorder qualifies as a mental disease or defect for purposes of ORS 161.300 has yet to be determined by the legislature. Recently, we noted:
"Personality disorders-like narcissistic, antisocial, or borderline personality disorder-are coded in the DSM-IV-TR under Axis II and are expressly distinguished from Axis I clinical disorders like *** anxiety disorder. We have observed that personality disorders 'are more resistant to treatment than Axis I disorders because Axis II disorders generally involve a more enduring and pervasive set of maladaptive behaviors, perceptions, and beliefs.' "
State v. Zielinski , 287 Or. App. 770, 782, 404 P.3d 972 (2017) (quoting State ex rel Dept. of Human Services v. R. N. L. , 218 Or. App. 188, 192 n. 3, 180 P.3d 704 (2008) ).